JOSEPH M. TAGLIARINI

7 CALLE CAREYES

CELL: (949) 836-4477

SAN CLEMENTE, CA 92673-6997

Plaintiff, In Pro Per

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

JOSEPH M. TAGLIARINI ; as Trustee for the JOSEPH MICHAEL TAGLIARINI FAMILY TRUST

                       Plaintiff,

       vs.

WELLS FARGO BANK N.A.;
FIRST AMERICAN TRUSTEE
SERVICING SOLUTIONS, LLC.; and
DOES 1 THROUGH 10 INCLUSIVE,

                     Defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. **SACV 13·00270 AG (JPRx)**

Hon.
Courtroom:

## PLAINTIFFS' COMPLAINT FOR VIOLATION OF FEDERAL LAWS

1. **DECLARATORY RELIEF TITLE**
   [28 U.S.C.§§ 2201,2202]

2. **NEGLIGENCE**

3. **QUASI CONTRACT**

4. **Violation of Title "FDCPA"**
   [15 U.S.C. §§ 1692 et seq.]

5. **Violation of CALIFORNIA BUSINESS AND PROFESSIONS**
   [CODE § 17200, et seq.]

**<u>Jury Trial Demanded</u>**

# **TABLE OF CONTENTS**

**I.** JURISDICTION, VENUE ...................................................……………..3

**II.** THE PARTIES ..................................................................................3

**III.** GENERAL FACTUAL ALLEGATIONS ..............................................4

**IV.** INTRODUCTION ..............................................................................5

**V.** FIRST AMERICAN TTRUSTEE'S

Role does not isolate them from compliance with the Law............................13

**VI:** EVENTS LEADING TO THE LEGAL ACTION AND PLAINTIFFS'

EFFORTS IN CURING THE DEFAULT...................................................14

**VII:** PLAINTIFF HAS SUFFERED..............................................................16

FIRST CAUSE OF ACTION-DECLARATORY RELIEF...........................19

SECOND CAUSE OF ACTION-NEGLIGENCE........................................21

THIRD CAUSE OF ACTION-QUASI CONTRACT...................................22

FOURTH CAUSE OF ACTION....................................................................23

FIFTH CAUSE OF ACTION........................................................................25

PRAYS FOR RELIEF...................................................................................27

DEMAND FOR A JURY TRIAL..................................................................29

VERIFICATIONS.........................................................................................30

## I. JURISDICTION AND VENUE

1. This court has jurisdiction over this action pursuant to Title [28 U.S.C. § 1332] which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00, Title [28 U.S.C §1331,2201, 2202] ,[Title 12 U.S.C § 2605],   Fair Debt Collection Practices Act [15 U.S.C. § 1692-1692p & Title 8 U.S.C. § 802 et seq.].  The Defendants and each of them have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, in connection with the transactions, acts, practices and courses of business alleged in this complaint and as such Plaintiff have been aggrieved, or legally harmed by the Defendant's actions.

2. Venue is proper in this district pursuant to[15 U.S.C § 1681p] ,and [28 U.S.C § 1392] as the action involves real property and because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal laws occurred within this district.

## II. THE PARTIES

3. PLAINTIFF, JOSEPH M. TAGLIARINI as Trustee for the JOSEPH MICHAEL TAGLIARINI FAMILY TRUST, at all times herein relevant to the complaint is the owner of real property commonly known as 7 CALLE CAREYES, SAN CLEMENTE, Ca 92673-6997. ("Plaintiff")

4. DEFENDANT, WELLS FARGO BANK N.A. ( hereafter; WELLS), a Federally Chartered Bank; doing business in California as a member of the National Association of Banks ("Servicer , Debt Collector & alleged creditor of the alleged debt").

5. DEFENDANT, FIRST AMERICAN TRUSTEE SERVICING, SOLUTIONS,LLC. ( hereafter; FIRST AMERICAN);   a California Corporation; the alleged Trustee of the Deed of Trust . ("Debt Collector and alleged Trustee of the Deed of Trust") also referred to as the ("Contract").

6. DOES 1 THROUGH 10 INCLUSIVE, Plaintiff does not know the true names and nature of Defendants DOES 1 THROUGH 10 INCLUSIVE, and will amend this complaint when their true identities have been ascertained according to proof at trial.

7. Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that such Defendant acted individually and jointly with the other Defendants.

8. Any allegation about acts of any corporate or other business means that the corporation or other business did the acts alleged through officers, directors, employees, agents and /or representatives while they were acting within the actual or ostensible scope of their authority.

9. At all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

10. At all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

## III: GENERAL FACTUAL ALLEGATIONS

11. The Plaintiff is informed and believes and alleges thereon that Defendants are third party strangers to his alleged debt and mortgage and have no ownership interest entitling them to collect payment or declare a default. In fact; Defendant WELLS FARGO BANK N.A. (hereafter, Wells) is merely a Servicer and Collector and Defendant FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS LLP. (hereafter, First American) is acting and collaborating as the alleged trustee of Deed of Trust for the purpose of collection through the disposition of Plaintiffs Real Property. Plaintiff is informed and now alleges that Defendants are "designated financial agents" of the United states Treasury acting as collectors under the guise of authority assigned to them by the United States Treasury without conducting their proper due diligence as prescribed by the United States Treasury guidelines. Plaintiff also alleges that

1   Defendants have been engaged in an elaborate business practice to deceive, misrepresent and
2   have schemed to commit fraud and other acts of fraud against the Plaintiff in order to collect on
3   alleged debts; Defendants have resorted to "papering the file" by fabricating and filing an
4   "Substitution of Trustee and Assignment of Deed of Trust", employing individuals who have no
5   authority or personal knowledge of the facts to which they attest, and falsely representing to
6   Plaintiff and the court that they have the right to take the Plaintiff Real Property away. Plaintiff
7   is informed and alleges that Defendants have intentionally setup procedures which has used
8   enticement and promises of assistance to the Plaintiff and other borrowers to enable a systematic
9   default of loans and disposition of the real property with the intentional purpose of foreclosing
10  on Real Properties in order to collect fees which equal ($.45) forty five cents or more on each
11  dollar or 45% of all amounts collected through the liquidation of the Real Property " to be
12  eligible for compensation the designated financial agents must disposes the real property for
13  liquidation."

14      Through this action, Plaintiff seeks to stop Defendants fraudulent practices, discover the
15  reasons why Defendants have not offered any assistance to the Plaintiff after Plaintiff become
16  delinquent and was qualified for assistance per the Economic Stability Act of 2008 as stipulated
17  by their contract with the United States Treasury as a designated financial agent.

18                              **IV. INTRODUCTION**

19      12. During the high times of the mortgage refinancing and mortgage origination era
20  2002-2007 lenders became exposed to mass amounts of Risk in the United States.

21      13. As Wall Street entities rushed to "Securitize" the toxic loans and their anticipation of
22  the massive number of defaults that were to come in the form of toxic assets, they also placed
23  bets accordingly and bought exotic insurance products in the form of Credit Default Swaps[1].
24  The eventual meltdown of the market provided Wall Street with even more ridiculous profits.

25  ---
26  [1] In 1995, JPMorgan credit the Credit Debt Swap (CDS), essentially, a CDS is a form of insurance intended to protect the buyer of the policy in the case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan. The main difference between traditional
27  insurance policy and a CDS is that anyone can purchase a CDS; even those who have no direct "insurable interest" in the lender. CDSs' were instrumental during the housing bubble because once the banks ran out of creditworthy
28  borrowers; they had to run to un-creditworthy subprime borrowers. To avoid losses from defaults, the banks moved these risky mortgages off their books by bundling them into "securities" and selling them to investors. The CDS

14. As March of 2007 approached the market witnessed the beginning of the meltdown and the fall of one of the most historical and powerful players in wall street; Bear Stearns became the first major player to file for Bankruptcy protection as its toxic assets began to unravel.

15. By June 2007; the Mortgage market had started a nose dive and investors had began exiting the mortgage bond sector. Soon after Bear Stearns fell, other major houses on wall street began to collapse , Merrill Lynch was about to face the same faith as Bear Stearns, but their brokerage operations were an attractive target for bigger players and eventually they were taken over by Bank of America N.A. for stock options, and Citigroup was forced to shut down their mortgage division and to cut thousands of jobs.

16. As 2008 started it was clear that the mortgage sector and the mortgage backed securities had infected the overall market and had caused the volatile economic environment facing the nation and the world.

17. The last straw to brake the economy was the collapse of Lehman Brothers Holdings and the filing for bankruptcy protection for one of the country's oldest financial institutions and most revered members of the banking fraternity. This was a clear message to the investors around the globe that the end game for the Unites States real estate / mortgage sector and mortgage backed securities was now upon us. Lehman's bankruptcy was the largest failure of an investment bank since Drexel Burnham Lambert collapsed amid fraud allegations 18 years prior. Immediately following the bankruptcy filing, an already distressed financial market began a period of extreme volatility, during which the Dow experienced its largest one day point loss, largest intra-day range (more than 1,000 points) and largest daily point gain. What followed was what many have called the "perfect storm" of economic distress factors and eventually a $700bn bailout package (**Troubled Asset Relief Program**) prepared by Henry Paulson, Secretary of the Treasury, and approved by Congress. The Dow eventually closed at a new six-year low of 7,552.29 on November 20, followed by a further drop to 6626 by March of the next year. Durvexity spiked, due to funding issues at the major investment banks.

---

market is the only major financial sector of the market that is not governed by any rules, Due to this sector the estimated exposure to losses is in the Trillions for the taxpayers.

18. The **Emergency Economic Stabilization Act of 2008** (Division A of Pub.L. 110-343, 122 Stat. 3765, enacted October 3, 2008), commonly referred to as a bailout of the U.S. financial system, is a law enacted in response to the **subprime mortgage crisis** authorizing the **United States Secretary of the Treasury** to spend up to $700 billion to purchase distressed assets, especially **mortgage-backed securities**, and supply cash directly to banks. The funds for purchase of distressed assets were mostly redirected to inject capital into banks and other financial institutions while the Treasury continued to examine the usefulness of targeted asset purchases. Both foreign and domestic banks are included in the program. The Act was proposed by Treasury Secretary Henry Paulson during the global financial crisis of 2008.

19. The original proposal was submitted to the United States House of Representatives, with the purpose of purchasing bad assets, reducing uncertainty regarding the worth of the remaining assets, and restoring confidence in the credit markets. The bill was then expanded and put forth as an amendment to H.R. 3997. The amendment was rejected via a vote of the House of Representatives on September 29, 2008, voting 205–228. On October 1, 2008, the Senate debated and voted on an amendment to H.R. 1424, which substituted a newly revised version of the **Emergency Economic Stabilization Act of 2008** for the language of H.R. 1424. The Senate accepted the amendment and passed the entire amended bill, voting 74–25. Additional unrelated provisions added an estimated $150 billion to the cost of the package and increased the length of the bill to 451 pages. (*See* Public Law 110-343 for details on the added provisions.) The amended version of H.R. 1424 was sent to the House for consideration, and on October 3, the House voted 263–171 to enact the bill into law. President George W. Bush signed the bill into law within hours of its congressional enactment, creating the $700 billion **Troubled Asset Relief Program (TARP)** to purchase failing bank assets. TARP was dwarfed by other guarantees and lending limits; analysis by Bloomberg found the Federal Reserve had, by March 2009, committed $7.77 trillion to rescuing the financial system, more than half the value of everything produced in the U.S. that year.

20. The Purpose of the Act 12 U.S.C. Sec. 5201. The purposes of this chapter are—

(1) to immediately provide authority and facilities that the Secretary of the Treasury can

use to restore liquidity and stability to the financial system of the United States; and

(2)  to ensure that such authority and such facilities are used in a manner that—

(A)  **protects home values**, college funds, retirement accounts, and life savings;

(B)  **preserves homeownership** and promotes jobs and economic growth;

(C)  **maximizes overall returns to the taxpayers of the United States**; and

(D)  **provides public accountability for the exercise of such authority**.

21.    12 U.S.C Sec. 5202. Definitions ;  The term "**troubled assets**" means—

(A)  **residential or commercial mortgages and any securities**, obligations, or other instruments that are based on or related to such mortgages, that in each case was originated or issued on or before March 14, 2008 [**Plaintiff's Loan was originated well before this date**], the purchase of which the Secretary determines promotes financial market stability; and

(B)  any other financial instrument that the Secretary, after consultation with the Chairman of the  Board of Governors of the Federal Reserve System, determines the purchase of which is necessary to promote financial market stability,  but only upon transmittal of such determination, in writing, to the appropriate  committees of Congress.

22.  12 U.S.C Sec. 5219. "**Foreclosure mitigation efforts**"

(a)

**Residential mortgage loan servicing standards**

(1)

In general

To the extent that the Secretary acquires **mortgages**, **mortgage backed securities**, and other assets secured by **residential real estate, including multifamily housing**, the Secretary shall implement a plan that seeks to **maximize assistance for homeowners** and use the authority of the Secretary to encourage the servicers of the underlying mortgages, considering **net present value to the taxpayer**, to take advantage of the **HOPE for Homeowners Program** under section 1715z–23 of this title or other available programs to minimize foreclosures.  In addition, the Secretary may use loan guarantees and credit enhancements to facilitate **loan modifications** to prevent avoidable foreclosures.

23. As of October 2008 Defendant Wells took on the responsibility of the collection of debts that were originated or acquired by them after being assigned these debts by the Department of Treasury which included the acquisition of mortgages originated by BHS Home Loans a now dissolved mortgage banker and the originator of Plaintiffs' mortgage.

24. Here, Plaintiff alleges that the "true sale" of BHS assets to Defendant Wells never took place and thereby, Defendant Wells did not acquire any legal, equitable, and pecuniary interest in the Plaintiffs Note and Mortgage. As a result, thereof, Wells which purports to be the Plaintiffs' creditor, actually has no secured or unsecured right, title, or interest in the Plaintiffs' Note and Mortgage, and has no right to report derogatorily against the Plaintiffs' credit, or to default the Plaintiff, Plaintiff re-alleges that Wells' role is a Servicer which became a collector per their contract with the department of treasury.

25. Despite the procedural requirements and the rules governing the proper compliance of such transactions, Defendants attempt to take advantage of the complex structured financial system to defraud the Plaintiff as they have done with millions of other homeowners from the inception of the meltdown. Plaintiff anticipates that Defendants and their counsel will seek a Court-sanctioned bailout by submitting a blatantly fabricated "Assignment" and a Deed of Trust accompanied with the Original Note that does not show the name of Defendant Wells the purported creditor and assignee of the debt via a Request for Judicial Notice; as a matter of fact Defendant Wells *cannot* prove or show an **original receipt** from the original lender that they purportedly assigned the alleged debt, thereby committing fraud on the court, and attempting to further mislead Plaintiff that Defendants Wells and First American Trustee Servicing Solutions, LLC. are actual creditors, and are entitled to enforce their alleged obligation.

26. The Plaintiff *does not dispute* that they owe an amount on their alleged Mortgage obligation[2]. Rather, Plaintiff disputes Defendants alleged claim as being the creditor of the alleged debt and their right to disposes the real property for liquidation without complying with the required perimeters as set forth by the United States Treasury to offer a **loan modification** to

---

[2] However, simply because Plaintiffs do not dispute this fact, the court should not condone Wells Fargo, and FIRST AMERICAN s', fraudulent behavior and predatory mortgage collection practices and allow it to collect on money it was not owed. Simply put, the court should not allow the defendants to trample over 200 years of well-settled property laws just because the "owes somebody money."

Plaintiff and seeks the Court's assistance in determining specifically what rights, if any , the Defendants have to claim a secured or unsecured interest in the Plaintiff alleged Note or alleged Mortgage.

27. Plaintiff is informed and alleges that the Defendants are not the true beneficial parties in interest in the alleged debt and alleged mortgage. Defendants have assumed the collection of the alleged debt on behalf of the United States Treasury as designated financial agents;  Plaintiff is informed and alleges that Defendants are attempting to collect this debt and others on behalf of the Department of Treasury for a fee or compensation as financial agents designated for the collection of the alleged debt. The Plaintiff now re-alleges that Defendants are debt collectors under the meaning of "debt collector" as stipulated by the "F.D.C.P.A" 15 U.S.C. § 1692 (a)(6); Defendants are not the originators of the alleged debt and did not service the debt as the originators of the alleged debt;  Defendants also fall within the meaning the *"F.D.C.P.A"* collecting alleged debts at the time the alleged debts were in default,  this fact can be confirmed by the Notice of Trustee Sale filed by First American Loanstar Trustee Services in 2009 as the nominee of the lender and trustee and the subsequent collection of payments from the Plaintiff on May 21, 2009.

28. On or about April 24, 2006, Plaintiff executed a Note and Mortgage in favor of BHS Home Loans , LLC. (hereafter "BHS" obtaining an alleged loan on the property located at  7 Calle Careyes , Ca 92673-6997 ; BHS was named on the Deed of Trust as the purported "beneficiary" and  Fidelity National Title Ins Co. was named as the "trustee" of the Deed of Trust.

29. Plaintiff is informed and alleges that  BHS, never sold, transferred , or granted their Note or Mortgage to the sponsor, depositor, U.S. Bank National Association or Wells and that Wells, and First American  are merely third - party stranger to the alleged debt / mortgage  "the Loan" transaction.

30. Furthermore,  Plaintiff alleges that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiffs' Note was ever endorsed, and transferred to  Wells or First American prior to the filing of this complaint.   In addition, Defendants did not provide a

*"**Notice of New Creditor**"* to the Plaintiff within 30 days after the purported debt had been allegedly assigned or transferred to a third party[3] as required by [15U.S.C.§1641.]   Although this information should be readily available to any mortgage ***servicer or assignee***, Wells has failed to provide any evidence to verify the owner and amount of the Plaintiffs' Mortgage or validate the claim to Plaintiffs' debt obligation as of the filing of this complaint".

31. The Plaintiff does not allege or assert that they are the beneficiary of the alleged debt. Rather, Plaintiff alleges that the failure to record a real assignment of their Note makes it impossible for Wells or First American to claim, allege or assert that it was assigned, transferred or granted Plaintiffs' Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiff also alleges that the failure to legally and properly assign their Note and mortgage has resulted in an unperfected lien that Defendants cannot enforce in any manner whatsoever[4].

32. Plaintiff now re-alleges that Defendants Wells and First American are not beneficiaries of the Plaintiff's Note and Grant Deed; rather, they have a Servicer and Debt Collector relationship with the Plaintiff . Plaintiff re-alleges that Defendant Wells was hired as a designated financial agent by the Department of Treasury ( hereafter; D.O.T) to Service and Collect on behalf of the DOT on mortgages that were acquired by the D.O.T as toxic assets which were originated through BHS . Plaintiff also re-alleges that FIRST AMERICAN is an affiliate of Wells which is acting as an attorney and as the trustee of the Deed of Trust in order to collect on behalf of Wells.  Plaintiff is informed and alleges that Wells and FIRST AMERICAN did not follow the procedures set forth by the Department of Treasury in order to mitigate the

---

[3] [15 U.S.C.§ 1641] the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including- (A) the identity, address, telephone number of the new creditor (B) the date of the transfer (C) how to reach an agent or party having authority to act on behalf of the new creditor (D) the location of the place where transfer of ownership of the debt is recorded; and (E)any other relevant information regarding the new creditor.

[4] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, BAC Home Loan Servicing, and RECONTRUST, in which Attorney General Catherine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had the authority to foreclose despite the fact that there were fatal deficiencies in transfers to the securitization Trusts, State of *Nevada vs. Bank of America et al.*, No.3:11-ev-00135-RJD,(C.D. New August 30,2011). The AG concludes that, "[t]hese are mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of their mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note."*Id* at ¶ 146.

foreclosure process in the prescribed manner as stipulated in 12 U.S.C. 5201 Et seq. that would benefit the tax payers **(the true investors of the troubled asset relief program and the true investors of the mortgages)** and Defendants have violated their agreement to conduct their due diligence on the Plaintiff's mortgage. In addition; Plaintiff relied on Wells Fargo Banks' misrepresentation and has been damaged in the following ways: (1) multiple parties may seek to enforce their alleged debt obligation against them; (2) the title to his home has been clouded and rendered unmarketable (unless more fraudulent actions are taken to show the foreclosure proceedings as proper and legal), as any would be buyer of the Plaintiffs' property will find themselves in legal limbo, unable to know with any certainty whether they can safely buy the Plaintiffs' property or get title insurance; (3) Plaintiff's property is now in foreclosure after Plaintiff has invested over five hundred thousand dollars in the property; (5) Plaintiff became late and their credit worthiness has been destroyed due to the Defendants misreporting of alleged debts without proper standing (6) Defendant Wells intentionally did not qualify and offer Plaintiff a loan modification after the Plaintiff repeatedly asked for assistance in order to be unjustly enriched through the disposition of the Plaintiffs' property through the liquidation Process; Defendant Wells would receive $.45 of every dollar or 45% of amounts recovered through the foreclosure and liquidation process and Defendant FIRST AMERICAN would receive their compensation without question.

33. In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seeks Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any, obligation of the Plaintiff in favor of Defendants Wells, or FIRST AMERICAN , such that any of them can collect Plaintiffs' mortgage payments, demand payment or engage in debt collection activities. Lastly, Plaintiff seeks Declaratory Relief as to whether the Defendant Wells has conducted their due diligence per the requirements set forth by the Department of Treasury in order to qualify Plaintiff for his Loan Modification.

**V. FIRST AMERICAN's  Role does not isolate them from compliance with the Law**

1

2      34.  Plaintiff is informed and alleges that FIRST AMERICAN TRUSTEE SERVICING

3   SOLUTIONS, LLC.. (hereafter, FIRST AMERICAN ) has disclosed themselves as Debt

4   Collector ; In fact their phone system discloses this fact as an automated statement and as such

5   their involvement is beyond the traditional foreclosure attorney scope of duties.  Defendant

6   FIRST AMERICAN  is a third party collector that has been hired as a subcontractor by

7   Defendant Wells to act as the Trustee of the Deed of Trust to portray the facade of a compliant

8   foreclosure process, Defendant FIRST AMERICAN  is not exempt from the same regulations

9   that Govern all other "designated financial agents" that have been hired by the D.O.T.  [ *See,*

10  *Lawyer responsible for false debt collection claim Fair Debt Collection Practices Act, 15 USCS*

11  *§§ 1692-1692o, Heintz v. Jenkins, 514 U.S. 291; 115 S. Ct. 1489, 131 L. Ed. 2d 395 (1995). and*

12  *FDCPA Title 15 U.S.C. sub section 1692.*]

13      35.  Plaintiff is also informed and re-alleges that FIRST AMERICAN  cannot rely solely

14  upon their filings of procedural paperwork to assert and invoke the sale of the real property

15  without strict compliance with the regulations set forth by the Department Of  Treasury to offer

16  Plaintiff and others in similar circumstances the opportunity to be qualified for a Loan

17  Modification.  Defendant FIRST AMERICAN  has to follow all guideline as set forth in the

18  HOPE FOR HOMEOWNERS section of the Economic Stability Act as passed by congress.

19  Plaintiff alleges that FIRST AMERICAN  is not an innocent party with limited exposure, but

20  they are bound by the same regulation as all other collectors that are attempting to collect the

21  alleged debts on behalf of the Department Of  Treasury as "Designated Financial Agents".  *In*

22  *Lambert v. Firstar Bank, 83 Ark. App. 259, 127 S.W. 3d 523 (2003), complying with the*

23  *Statutory Foreclosure Act does not insulate a financial institution from liability and does not*

24  *prevent a party from timely asserting any claims or defenses it may have concerning a mortgage*

25  *foreclosure A.C.A. §18-50-116(d)(2) and violates honest services Title 18 Fraud.  Notice to*

26  *credit reporting agencies of overdue payments/foreclosure on a fraudulent debt is defamation of*

27  *character and a whole separate fraud.*

28

36.  Plaintiff now re-alleges that Defendant FIRST AMERICAN  is a third party debt collector which has been hired by Defendant Wells as a subcontractor to collect on debts that are secured by a real property / mortgage,  the Defendants are collaborating in a scheme which will enrich them and would violate the stipulations as set forth in the Economic Stability Act to comply with the calculation of the Net Present Value of the asset in order to assure a profitable outcome for the real investors of such assets " Toxic Assets" the taxpayers.  Defendants Wells and FIRST AMERICAN 's actions violate not only the Plaintiffs' rights , but all taxpayers per the Economic Stability Act of 2008.  Plaintiff requests the court to define the procedures which the Defendants have to follow through an ADR program as stipulated by the court.

## VI: **EVENTS LEADING TO THE LEGAL ACTION AND PLAINTIFFS' EFFORTS IN CURING THE DEFAULT**

37.  On or about  June 2007, Plaintiff came into financial hardship due to the economic collapse and a personal injury;  Plaintiff inquired about assistance available for homeowners from the purported servicer at the time Wells Fargo Bank N.A. in an attempt to obtain a loan modification which was rejected without any explanation.  The Plaintiff was told that he could not be helped until he was 60 days late.

38.  In early 2008,  Plaintiff initiated contact with the purported servicer at the time Wells Fargo Bank in an attempt to obtain a loan modification which was rejected without any explanation.  On December 9, 2008, Wells Fargo or the Investor caused Defendant First American to record a **Notice of Default and Election to Sell.**

39.  On or about 2008 Wells Fargo Bank sponsored the sale of  the Plaintiffs alleged debt / deed the mortgage to U.S. Bank National Association, as trustee for the Mortgage pass-through certificates Series 2006-F .  Plaintiff is informed and alleges that Wells only acquired the rights to service the Mortgage portfolio that had been originated by BHS and similar entities  and that Wells never acquired a pecuniary interest in the Plaintiffs' mortgage.  Plaintiff now re-alleges that there was never a True Sale of Mortgages or mortgage backed securities from Wells Fargo Bank to U.S. Bank National Association.

40. On or about January 2009, Plaintiffs' property received a filing of a substitution of Trustee signed by a robo signer allegedly replacing the original trustee Fidelity Title Insurance Company with First American Loanstar Trustee Services; signed by the purported servicer at the time Wells.

41. On or about February 19 , 2009, Wells Fargo Bank  placed the Plaintiff in a forbearance agreement that increased his payments..

42. On or about February 2009 Plaintiff received a forbearance agreement from Wells Fargo as the purported Servicer and Collector.  Plaintiff  continued to pay on his payments that increased by $3,000.00 and not before long he fell behind.

43. On or about March 2009, Defendants Wells and FIRST AMERICAN LOANSTAR TRUSTEE SERVICES served Plaintiff with a Notice of Trustee sale;  at the time the accrued interest was approximately $40,000.00 on a loan amount of  $1,300,000.00  before considering the Plaintiff for a loan modification, instead the servicer Wells opted to file a Notice of Default on the property.  Plaintiff alleges that Defendant Wells moved to foreclose on the property to be rewarded as a collector which would collect 45% of fees collected through the disposition and liquidation of the Real Property without any consideration for Plaintiffs circumstances.

44. On March 31, 2009, Plaintiff filed a Chapter 11 Bankruptcy, Case Number 8:00-bk-12872-ES. On or about January 7, 2011, the Bankruptcy was dismissed, and the foreclosure

45. Plaintiff alleges that Defendant Wells as a Servicer would only make .5% -0.625% of the total loan amount as a servicer on annual basis ( $1,300,000.00 x .625% = $8,100.00) , but if the servicer becomes a collector and forecloses on the property with this loan amount they would be making ($1,100,000.00 market value x 45% = $ 445,000.00).  Plaintiff re-alleges that the foreclosure process is designed to enrich the alleged servicer / collectors / trustees / beneficiaries.

46. On or about August 2012, Plaintiffs' property received yet another filing for a substitution of trustee yet again signed by another robo signer ; however this time the purported trustee is Wells Fargo Bank N.A. and stating that the Plaintiff is the trustor and original trustor. In addition;  the Plaintiffs property received other filings on September 17, 2012 under the

heading of a "corporate assignment of deed of trust" stating the transfer of the beneficial interest from Wells the purported servicer to U.S. Bank National Association; Plaintiff alleges that U.S. bank National Association is not aware of the filings of any of these documents , in fact the Defendants have played the role of trustee, trustor, servicer, beneficiary, lender, collector, in the process of filing the documents recorded with the county of orange.

47. Plaintiff now re-alleges that Defendants Wells Fargo Bank and FIRST AMERICAN have no right to collect on the alleged debts without fulfilling their obligations on performing the needed due diligence as required per the United States Treasury guidelines; in fact Wells and FIRST AMERICAN are collectors and have violated the law by not disclosing their true role as debt collectors , instead they have deceived the Plaintiff into believing that they have the right to deny Plaintiff on his request for a true loan modification.

48. On or about 2009 Wells Fargo Bank N.A., started to communicate with Plaintiff as the purported servicer of the loan; Wells contacted Plaintiff in an attempt to collect on the delinquent amounts due from the period of 2007- 2008; and as such Defendant attempted to collect a debt from Plaintiff after the debt had been in default and recorded with the Orange county recorder's office as of December 2008. In addition the Defendants never provided the Plaintiff with the required disclosures pursuant to [15 U.S.C § 1641] showing proof that they are the new owners or assignees of the alleged debt; Plaintiff re-alleges that Defendants Wells and FIRST AMERICAN are third party collectors and have no pecuniary interest in the purported debt and as such do not have the right to collect or to foreclose on the Plaintiffs' mortgage.

## VII : PLAINTIFF HAS SUFFERED, AND CONTINUES TO SUFFER SIGNIFICENT MONETERY, LEGAL, AND EQUITABLE DAMAGES

49. The conduct described above by Wells and FIRST AMERICAN is/ was malicious because Defendants knew that they were not acting on behalf of the current beneficiary with the pecuniary interest of the Note and Mortgage. However, despite such knowledge, said Defendants continued to demand and collect Plaintiff's mortgage payments.

50. Defendants engaged and are engaging in a pattern of defrauding Plaintiff and others, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed

1  to properly conduct the due diligence needed for a Loan modification, incorrectly calculated the

2  Net Present Value, and failed to accurately calculate and process Plaintiff's modification

3  application.

4      51. On information and belief, at all times material, Wells had and has knowledge that

5  Plaintiffs' application for modification was not accurately processed.

6      52. On information and belief, Plaintiff stopped making payments based on the

7  improper, inaccurate, and Defendants' fraudulent representations as to Plaintiffs' ability to get

8  the assistance needed for a loan modification.

9      53. As a direct and proximate result of the actions of Defendants set forth above,

10  Plaintiffs' financial interest in the Real Property has been jeopardized.

11      54. As a direct and proximate result of the actions of the Defendants set forth above,

12  Plaintiffs' credit and credit score have been severely damaged.  Specifically, because of the

13  derogatory credit reporting on their credit report by Wells , Plaintiff is unable to make use of

14  their credit worthiness and to obtain any credit.

15      55. As a direct and proximate result of the actions of the Defendants set forth above, the

16  title to the Plaintiffs' property has been slandered, clouded, and its salability has been rendered

17  unmarketable.

18      56. As a direct and proximate result of the actions of the Defendants set forth above,

19  Plaintiff does not know who the current beneficiary of their alleged Note and Mortgage actually

20  is, such that they are now subject to "double financial jeopardy".

21      57. As a direct and proximate result of the actions of the Defendants set forth above,

22  *multiple* parties can attempt to enforce Plaintiffs' alleged debt obligations.

23      58. The conduct of Wells and one or more of the Doe Defendants has led to imminent

24  loss of Plaintiffs' real property and pecuniary damages. The pecuniary damages include, but are

25  not limited to, the delinquent amount of accrued interest on the loan, the cost of repairing

26  Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, the cost associated

27  with removing the cloud from his property title and attorney's fees, in an amount to be proven at

28  trial.

59.  The conduct of Wells and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiffs' Note and Deed of Trust,  yet they intentionally and fraudulently represented to Plaintiff that were the true beneficiaries of the alleged debt, Defendants kept Plaintiff  in a long drawn out process in order to take advantage of fees they would charge to collect on the alleged debt by the disposition of the real property, (*which by law under 12 U.S.C. 5201 et seq. is the only method that qualifies the Debt Collectors for their compensation from the United States Treasury*.)  Defendant Wells covered up this defect by wrongfully recording a fraudulent Assignment, substitution of trustee, corporate assignment of deed of trust and additional robo signed paperwork which would be enable them to *illegally and fraudulently* collect on Plaintiffs' debt, and which in essence has rendered the title of the property unmarketable.

60.  The title to Plaintiffs' Property has been rendered unmarketable and useable because of the possibility of multiple claims made against Plaintiffs' alleged debt obligation and the underlying security (the subject property).  If the Assignment of the Deed of Trust is not cancelled and set aside, Plaintiff will be incurably prejudiced.  Plaintiff will be denied the opportunity to identify and negotiate with the *true creditor* and exercise their right to verify and validate their alleged debt.

61.  The Plaintiff *has not offered* to and has not submitted the unconditional tender to his alleged obligation[5] as Plaintiff has a genuine dispute against Defendants alleged claims to the beneficial interest and standing in the alleged debt/loan , the mortgage.  The Plaintiff is informed and re-alleges that Defendants are misrepresenting their role and interest in alleged mortgage;

---

[5]  Case law makes it clear that **Plaintiff is only required to allege a credible offer of tender**, not actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 21336969 at *3(N.D. Cal. July 16, 2009) (...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is *not* required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage electronic registration systems, Inc.* No.CV 11-1658 AHM, 2011 WL 25330299(C.D. Cal June 24, 2011), 148 Cal. App. 2d 558,564 (1957). See also, *Foulkord v. BANK OF AMERICA N.A. Fargo Financial California Inc.,* No. CV 11-732-GHK (AJWx)(C.D. Cal May 31,2011)("...requiring Plaintiff to tender the amount due on his loan at this time would be *illogical and inequitable* given that he disputes that BANK OF AMERICA N.A. Fargo has any rights under the loan.") In light of the fact that Plaintiff contents the legitimacy of the Defendants' claim to the mortgage payments, it would be *illogical and inequitable* to require Plaintiff to actually tender the amount given that Plaintiff disputes whether Defendants have any rights under the loan. See *Onofrio v. Rice*, 55 Cal. App. 4th 413,424(1997).

1  Defendants true roles are as acting Servicer and Collectors which have intentionally
2  misrepresented their role in order to become unjustly enriched through the disposition of the
3  Property and the liquidation of the Property.  Defendants have been/ will be enriched unjustly by
4  their assertions on the alleged debt and the disposition of Plaintiffs' Real Property through
5  Foreclosure  if they are not held to their obligations to the tax payers and the Department of
6  Treasury by conducting a detailed due diligence of the Plaintiff for a Loan modification.

7              **FIRST CAUSE OF ACTION-DECLARATORY RELIEF: TO DETERMINE**
8                          **STATUS OF DEFENDANTS' CLAIMS**
9                             **[28 U.S.C.§§ 2201,2202]**
10                      **[Against All Defendants and Doe Defendants]**

11         62.  The Plaintiff hereby incorporates by reference each and every one of the preceding
12  paragraphs as if the same were fully set forth herein.

13         63.  Section 2201(a) of Title 28 of the United States Code states:
14  In case of actual controversy within its jurisdiction, except with respect to Federal taxes other
15  than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding
16  under section 505 or 1146 of title 11, or in any civil action involving an antidumping or
17  countervailing duty proceeding regarding a class or kind of merchandise of a free trade area
18  country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the
19  administering authority, any court of the United States, upon the filing of an appropriate
20  pleading, may declare the rights and other legal relations of any interested party seeking such
21  declaration, whether, or not further relief is or could be sought.  Any such declaration shall have
22  the force and effect of a final judgment or decree and shall be reviewable as such.

23         64.  Section 2202 of Title 28 of the United States Code states:  Further necessary or
24  proper relief based on declaratory judgment or decree may be granted, after reasonable notice
25  and hearing, against any adverse party whose rights have been determined by such judgment.

26         65.  Plaintiff alleges that neither Wells nor FIRST AMERICAN  have a secured or
27  unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and
28  that its purported assignment has no value since the Deed of Trust is wholly unsecured.  In fact;

Defendants roles are solely as a Servicer and Debt Collector which is attempting to take advantage of their agreements with the United States Treasury and the FDIC in order to be unjustly enriched through the illegal disposition and liquidation of the Plaintiffs' property.

66. On or about April 24, 2006, Defendants claim they had secured enforceable interest in, and perfected lien against, the Plaintiffs' Note, deed of Trust and Property.

67. Thus, the *competing allegations* made by Plaintiff, above, establish that a ***real and actual controversy*** exists as to the respective rights of the parties to this matter, including ownership of the Property.

68. Accordingly, Plaintiff requests that the Court make a finding and issues appropriate orders stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, or the Property which authorizes them, in fact or as a matter of law, to collect Plaintiffs' mortgage payments or enforce the terms of the alleged Note or Deed of Trust in any manner whatsoever.  Plaintiff also seeks the courts help in issuing orders to Defendants to perform the required due diligence on the Plaintiffs' ***"Net Present value"*** as stipulated by the United States Treasury guidelines for the benefit of the Tax payers as the only real Investors of the alleged Note on the Debt and on behalf of the Plaintiffs' foreclosure mitigation efforts.

69. Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: *(1) Plaintiff will be denied the opportunity to identify their true and current creditor/lender and to negotiate with them;(2) They will be denied the right to conduct discovery and have Wells and FIRST AMERICAN 's claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) they will be denied the opportunity to discover the true amount they still owe minus any legal costs, fees and charges (4) Plaintiff will be denied their opportunity to secure a loan modification and for tax payers to mitigate their potential losses as the true investors.*

70. Due to the actual case and controversy regarding competing claims and the allegations, it is necessary that the court declare the actual rights and obligations of the parties and make a determination as to whether Wells and FIRST AMERICAN  claims against the

1  Plaintiff are enforceable and whether it is secured or unsecured by any right, title, or interest in

2  Plaintiffs' real property.

3      71.  Furthermore, the conduct of Defendants Wells and FIRST AMERICAN as their

4  agent, and one or more of the Doe Defendants, and each of them, as herein described, has been

5  so malicious and contemptible that it would be looked down upon and despised by ordinary

6  people.  Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish

7  Defendants and to deter others from engaging in similar conduct.

8              ## SECOND CAUSE OF ACTION - NEGLIGENCE

9                  ### [Against All Defendants and Doe Defendants]

10     72.  Plaintiff hereby incorporates by reference each and every one of the preceding

11  paragraphs as if the same were fully set forth herein.

12     73.  At all times relevant herein, FIRST AMERICAN was acting as a purported agent for

13  Wells Fargo Bank N.A.,  Defendants are jointly and severally liable for FIRST AMERICAN 's

14  and/or Wells Fargo Banks' negligent and reckless conduct.

15     74.  BHS Home Loans LLC. (which has not been in existence as of 2008) as the

16  purported beneficiary of the Note and Deed of Trust and Defendants Wells Fargo Bank N.A. as

17  purported mortgage *Servicer / Collector* and FIRST AMERICAN as the purported *Trustee and*

18  *Collector*, all have a duty to exercise reasonable care[6]  and skill to follow California law with

19  regard to enforcement of monetary obligations, and to refrain from taking or failing to take any

20  action against Plaintiff that they did not have the legal authority to do.  This includes not

21  collecting or demanding mortgage payments when they do not have the right to enforce the

22  obligation, causing the Plaintiff to become delinquent in his mortgage, making derogatory credit

23  reports to credit bureaus, and failing to accurately and correctly  process Plaintiffs' request for

24  mortgage assistance, and to properly conduct the due diligence required for the Net Present value

25  calculation per the United States Treasury.

---

26  [6] Normally lenders and servicers do not owe a borrower a duty of care.  *Nymark v.Heart Fed. Savings & Loan*
   *Assn.*, 231 Cal. App.3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to discharge its
27  contractual duties with reasonable care. Das v. bank of Am, 186 Cal.App.4th 727,741 (2010). Additionally, a bank
   may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business
28  transaction that it knowingly aided in the commission of the tort. Id (citing *Casey v. U.S. Bank Nat.Assn.* 127 Cal.
   App. 4th 1138, 1144-45).

75.  Wells and FIRST AMERICAN  have a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiff that they do not have the legal authority to do.  As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, the chain of title to Plaintiffs' Property has been rendered unmarketable and fatally defective and has caused Plaintiff to lose saleable title to the subject property.

76.  Wells and FIRST AMERICAN  breached that duty when they failed to follow the guidelines established requiring the proper due diligence of the Plaintiffs' application for Mortgage Assistance per the stipulated perimeters of the United States Treasuries Net Present value.

77.  As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trail, including attorneys' fees and costs of bringing suit to dispute, validate, and challenge said Defendants' purported rights to enforce the Plaintiffs' alleged debt obligation.

### THIRD CAUSE OF ACTION-QUASI CONTRACT

**[Against Wells Fargo Bank N.A.]**

78.  Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

79.  Defendant Wells told Plaintiff that he was not eligible for assistance after becoming delinquent on his mortgage without any explanation.  Defendant Wells has prolonged the assessment of the mitigation period in order to increase the accrued interest amounts to equal an amount that would make the net present value negative and hence denying  Plaintiff  his proper due diligence.  Defendant after continuing to extend the period of mitigation assessment contacted  Plaintiff; only to attempt to foreclose on the Real Property for back payments.  Wells continued to demanded monthly mortgage payments from Plaintiff while misrepresenting the fact that they were properly and accurately processing Plaintiffs application for mortgage assistance ( loan modification.)  Plaintiff reasonably relied upon Wells's assertion that they

1  are/were entitled to the benefit of Plaintiffs' mortgage payments and representations that

2  Defendants were conducting a proper due diligence of Plaintiffs application.

3      80.  Wells knowingly accepted Plaintiffs' mortgage assistance application by representing

4  themselves as the true owners of the loan (true beneficiary) and not accurately processing the

5  application  knowing that Wells did not acquire any pecuniary interest in Plaintiffs' Note, such

6  that they could accept or approve Plaintiffs' application.  It would be inequitable for Defendants

7  to benefit from the sale of the property through foreclosure and to be compensated for their

8  Negligence in the correct processing of Plaintiffs' application as required per United States

9  Treasuries foreclosure mitigation guidelines.  The equitable remedy of restitution when unjust

10  enrichment has occurred is an obligation created by the law without regard to the intention of the

11  parties, and is designed to restore the aggrieved party to their former position by return of the

12  thing or its equivalent in money.  Plaintiff asks the court to order Defendant Wells to process the

13  application for Mortgage Assistance on behalf of Plaintiff.

14      81.  Plaintiff seeks restitution for any damages which were caused by Wells Fargo

15  Banks' oversight in processing the Plaintiffs' application for Loan Modification.  In addition ;

16  FIRST AMERICAN should not be allowed to benefit from the ongoing deception.

### FOURTH CAUSE OF ACTION – FOR VIOLATION OF

### 15 U.S.C. § 1692, ET SEQ.

### [Against All Defendants and Doe Defendants]

20      82.  Plaintiff hereby incorporates by reference each and every one of the preceding

21  paragraphs as if the same were fully set forth herein.

22      83.  Federal law prohibits the use of any "any false, deceptive, or misleading

23  representation or means in connection with the collection of any debt…including the false

24  representation of…the character, amount, or legal status of any debt…and the threat to take any

25  action that cannot legally be taken…"

26

27

28

84.  In illegally attempting to collect on Plaintiffs' debt obligation in the manner described herein, Defendant Wells, as the purported assignee and mortgage servicer:

    a)  falsely represented the status of the debt, in particular, that it was due and owing to Defendant Wells at the time the suit was filed;

    b)  falsely represented or implied that the debt was owing to Defendant Wells as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

    c)  threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

    d)  attempted to collect on the promissory note under false pretenses; namely that Wells was assigned Plaintiff's debt when in fact they were not.

85.  Illegally collecting on alleged debts that were in default.  The "Notice of Default" was issued on September  2008, Defendants Wells attempted to collect on the alleged debt as of 2009 well after the debt had been in default.  "The Senate report emphasized the application of this section 15 U.S.C. § 1692(a) §§ 4.3.10 to mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing. In addition Defendants violated the statute by their alleged assignments being filed many months after the debt had been in default.   The Defendant's actions were illegal in their attempts to collect on the alleged debts as debt collectors claiming to be beneficiaries and creditors of the alleged debt.  The Defendants have misrepresented the "*character, amount and the legal status of the alleged debt*".

86.  Plaintiff now re-alleges that Defendants Wells and FIRST AMERICAN intentionally misrepresented their role as the purported servicer and debt collector knowing full well that their representation of being the original lender and servicer had enabled Defendants to act as debt collectors without fulfilling their required obligations on processing Plaintiffs' Mortgage Assistance Application for a Loan Modification, giving Defendants the opportunity to become unjustly enriched through the foreclosure and liquidation of the Real Property which

1  would qualify them for their compensation as Debt Collectors for a fee equaling 45% of the

2  amounts collected.

3  ## FIFTH CAUSE OF ACTION – VIOLATION OF

4  ## BUS. AND PROF. CODE SECTION 17200, ET SEQ.

5  **[Against All Defendants and Doe Defendants]**

6      87.  Plaintiff hereby incorporates by reference each and every one of the preceding

7  paragraphs as if the same were fully set forth herein.

8      88.  Defendants' conduct, for the reasons stated herein, is in direct violation of [12 U.S.C.

9  § 2605(e), et seq.] and [ 12 U.S.C. § 5201 et seq.]

10      89.  Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal

11  Code section 532(f) (a) (4).

12      90.  Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair completion,

13  which means and includes any unlawful, unfair, or fraudulent business act and conduct which is

14  likely to deceive and is fraudulent in nature.

15      91.  Defendants' attempt at collecting a debt that had never been properly disclosed under

16  [15 U.S.C. § 1641], failing to notify the new assignee, owner of the purported debt within 30

17  days of such transfer or assignment.

18      92.  As more fully described above, Defendants' acts and practices are unlawful, unfair,

19  and fraudulent. This conduct is ongoing and continues to this date. *Defendants have committed*

20  *similar acts of deception in the past as confirmed by their agreement with the department of*

21  *justice admitting to the court that they had committed acts that were not in compliance with*

22  *law*.

23      93.  Defendants engage in unfair, unlawful[7], and fraudulent business practices with

24  respect to mortgage loan servicing, and related matters by, among other things:

25          a)  executing and recording false and misleading documents[8];

26  ───────────────────────────────
[7] "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal,

27  statutory, or court-made. *Sanders v. Superior court*, 27 Cal.4th 832(1994);  *Hewlett v. Squaw Valley*, 54 Cal.4th
499(1997).

28  [8] Defendants' recording of the Assignment of Deed of Trust violates Cal. Penal Code section 532 (f)(a)(4), which
prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office
which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate

b)  executing and recording documents without the legal authority to do so;

c)  failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

d)  demanding and accepting payments for debts that were non-existent;

e)  violating the Security First Rule;

f)  reporting payments as late to credit bureaus without the legal right or authority to do so;

g)  acting as beneficiary, trustee, trustor  without the legal authority to do so, and;

h)  accepting and processing of Plaintiffs' application for assistance without proper due diligence as required by the United States Treasury  [12 U.S.C. § 5219.]

i)  Inputting false data and numbers which were / are not consistent with the correct input of data for the purposes of calculating the Net Present value in order to show a negative result.

j)  Other deceptive business practices as described herein.

102.  As more fully described above, Defendants' acts and practices are likely to deceive members of the public.

94.  Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein; Defendants violate several laws including Cal Bus. And Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

95.  Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over competitors.  The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

96.  The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiff.

---

that Defendants have committed mortgage fraud by filing the Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

97. By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. And Prof. Code sections 17203 and 17204.

98. As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiff has been injured in that the loss of his Real Property is imminent danger of being foreclosed due to Defendants intentional miscalculations and inaccurate processing of Plaintiffs Mortgage Assistance Application for a Loan Modification, also a cloud has been placed upon title to Plaintiffs' Property and Defendants have failed to remove this cloud from Plaintiff' title.

99. Plaintiff is entitled to an order compelling Wells, FIRST AMERICAN and any other Defendants claiming an interest in and to the Property to take any and all actions necessary to remove the cloud they have placed upon his title and an order enjoining such Defendants from taking such action again in the future.

### **WHEREFORE, Plaintiff prays as follows:**

1. For compensatory, special and general damages in an amount according to proof at trail, but not less than $5,000,000.00, against all Defendants;

2. For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3. For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property, including the purported Assignment of Deed of Trust.

4. For an order finding that Defendants have no legally cognizable rights as to Plaintiff, the Property, Plaintiffs' Promissory Note, Plaintiffs' Deed of Trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiff;

5. For the Court to issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the Property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

6. For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiff and returning the same to Plaintiff's interest thereon at the statutory rate from the date the funds were first received from Plaintiff;

7. For costs of suit incurred herein;

8. For reasonable attorneys' fees incurred; and

9. For such other and further relief as the Court may deem proper.

10. For an order to compel Defendants to properly and legally conduct a due diligence by which the Plaintiff can qualify for a ***"Loan Modification"***.

## DEMAND FOR JURY TRIAL

The Plaintiff  JOSEPH M. TAGLIARINI , as Trustee    for the JOSEPH MICHAEL

TAGLIARINI FAMILY TRUST ; hereby requests a jury trial on all issues raised in this

complaint under the Seventh Amendment to the U.S Constitution in accordance with "Federal

Rule of Civil Procedure 38."


Dated: 02-14-2013




**JOSEPH M. TAGLIARINI , as Trustee**
**for the JOSEPH MICHAEL TAGLIARINI**
**FAMILY TRUST,**
Plaintiff in pro per
*Without Recourse*

## **VERIFICATION**

I, JOSEPH M. TAGLIARINI , as Trustee for the JOSEPH MICHAEL TAGLIARINI FAMILY TRUST, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (federal government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated: 02-14-2013

**JOSEPH M. TAGLIARINI , as Trustee
for the JOSEPH MICHAEL TAGLIARINI
FAMILY TRUST,**
*Sui Juris*
*Without Recourse*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV13- 270 AG (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:



| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

NAME: JOSEPH M. TAGLIARINI
ADDRESS: 7 CALLE CAREYES
SAN CLEMENTE, CA 92673-6997
CELL: (949) 836-4477
Plaintiff, In Pro Per

**FOR OFFICE USE ONLY**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH M. TAGLIARINI;<br>"See Attached"<br><br>PLAINTIFF(S)<br><br>v.<br><br>WELLS FARGO BANK N.A.;<br>"See Attached"<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV 13 · 00270** AG (JPRx)<br><br><br>**SUMMONS** |

**FOR OFFICE USE ONLY**

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, JOSEPH M. TAGLIARINI, In Pro-Per __, whose address is 7 CALLE CAREYES SAN CLEMENTE, CA 92673-6997 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

**FOR OFFICE USE ONLY**

Clerk, U.S. District Court

Dated: 2-14-2013 _____          By: _Dwayne Roberts_

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1146

---

CV-01A (10/11)                                              **SUMMONS**

1

<u>ATTACHMENT TO THE SUMMONS</u>

2

as Trustee for the **JOSEPH MICHAEL TAGLIARINI FAMILY TRUST**

3

**Plaintiff(s),**

4

**v.**

5

**FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC.; and DOES 1
THROUGH 10 INCLUSIVE,**

6

7

**Defendant(s),**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment to Summons - 1

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)<br>JOSEPH M. TAGLIARINI ; as Trustee for the JOSEPH MICHAEL TAGLIARINI FAMILY TRUST | **DEFENDANTS**<br>WELLS FARGO BANK N.A.; FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC.; and DOES 1 THROUGH 10 INCLUSIVE, |
| **(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>JOSEPH M. TAGLIARINI           CELL: (949) 836-4477<br>7 CALLE CAREYES<br>SAN CLEMENTE, CA 92673-6997           Plaintiff, In Pro Per | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No          ☑ **MONEY DEMANDED IN COMPLAINT:** $ 5,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 U.S.C.§5201 et seq., 15 U.S.C §1692-1692p, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☑ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: SACV13·00270 AG(JPRx)

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ 　Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County , California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ 　Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Los Angeles County, California |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
　　**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County , California | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____  Date 2-14-2013

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |